UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **MARQUIS MOBILE DENTAL SERVICES, LLC and MARQUIS C. NAPPER, individually,** | ) ) ) ) |
| Plaintiffs/Counter-Defendants, | ) ) |
| v. | ) Case No. 3:08-1206 ) Judge Echols |
| **DON ABERCROMBIE, individually and d/b/a MAGNOLIA MOBILE DENTAL SERVICES, INC.,** | ) ) ) ) |
| Defendant/Counter-Plaintiff, | ) ) |
| v. | ) ) |
| **SHERRI SHUMAKER,** | ) ) |
| Counter-Defendant. | ) |

## MEMORANDUM

Defendant/Counter-Plaintiff Don Abercrombie ("Abercrombie") filed a Motion For Summary Judgment (Docket Entry No. 19), to which Plaintiffs/Counter-Defendants Marquis Mobile Dental Services, LLC ("Marquis") and Marquis C. Napper ("Napper") filed a response in opposition (Docket Entry No. 37) and Abercrombie filed a reply (Docket Entry No. 47). Also pending are Abercrombie's Motions to Strike (Docket Entry Nos. 45 & 46) statements from the declarations of Janice Adrian and Napper. No responses to the Motions to Strike have been filed.

On March 11, 2009, the Court entered a Memorandum and Order (Docket Entry No. 60 & 61) denying Abercrombie's Motion to Dismiss the federal Lanham Act claim under 15 U.S.C. § 1125(a)(1)(B). As stated in the prior Memorandum, this commercial dispute also involves

2

Plaintiffs' state-law claims against Abercrombie for libel of Marquis (Count I), libel of Napper (Count II), and intentional interference with Plaintiffs' present and prospective business relationships (Count III). These state-law claims brought by Plaintiffs against Abercrombie individually and doing business as Magnolia are the subject of the pending motion for summary judgment.[1]

## I. **FACTS**

Magnolia Mobile Dental Services, Inc. ("Magnolia") is a non-profit entity that facilitates the provision of dental services to nursing homes throughout Tennessee. Abercrombie is Magnolia's Chief Executive Officer. Magnolia provides a mobile dental operatory that travels to Magnolia's nursing home clients where dentists under contract with Magnolia provide dental services to nursing home patients.

In August 2008, several former employees and contractors of Magnolia started their own independent business, Marquis. The parties dispute whether the former Magnolia employees who started Marquis encouraged dentists under contract with Magnolia to stop performing services for Magnolia and to enter into contracts with Marquis. The parties also hotly dispute whether Marquis' representatives contacted nursing homes that were under contract with Magnolia, advised them that Magnolia was going out of business, and induced the nursing homes to enter into new contracts with Marquis. Magnolia asserts that Marquis used contract forms belonging to Magnolia, changed the entity name, and offered the contracts to the nursing homes, but Marquis does not agree with this

---

[1]Abercrombie recently filed an Amended Counterclaim (Docket Entry No. 58) against Marquis and Napper and joining new party Sherri Shumaker as a Counter-Defendant. In the Amended Counterclaim Abercrombie alleges claims against Marquis, Napper and Shumaker for conversion, intentional interference with contractual relationships and defamation.

3

characterization and claims that the contracts it used are different from Magnolia's. The parties also dispute whether Marquis employees cancelled Magnolia's scheduled visits to nursing homes and informed those nursing homes that the new company, Marquis, was taking over Magnolia's responsibilities. Further, the parties dispute whether Magnolia or one or more of its related entities was active and in good standing with the State of Tennessee or administratively dissolved. It is undisputed that Magnolia did not authorize Marquis to take over its contracts.

Abercrombie contends that Marquis' representatives stole funds and Magnolia property, including computers, dental equipment, medical records containing personal identifying information protected under HIPAA when they left Magnolia to start Marquis. Plaintiffs deny that any thefts occurred. Abercrombie claims that Magnolia investigated the circumstances surrounding the creation of Marquis and learned that certain allegations concerning Napper's conduct in holding himself out to be a dentist and performing dental procedures when he is not trained and licensed to do so are true. Abercrombie further claims that an investigation into the allegations by the Tennessee Bureau of Investigation ("TBI") has been underway for some time. Plaintiffs admit that Napper is not a licensed dentist, but deny that Napper held himself out as a dentist. Plaintiffs do not dispute that Magnolia was under investigation by the TBI.

On November 23, 2008, Abercrombie sent a memorandum on Magnolia letterhead to Magnolia's nursing home clients and the memorandum, according to the Verified Complaint, contained numerous false allegations about Marquis and Napper. Abercrombie seeks summary judgment on the two libel claims brought by Marquis and Napper on the ground that every statement in the memorandum was true and therefore, no claim for libel may lie. Marquis and Napper vigorously dispute that the content of Abercrombie's memorandum was true. Abercrombie also

4

contends that he disseminated the memorandum only to facilities that were currently under contract with Magnolia and not to the general public. Marquis and Napper also dispute this, contending that several facilities received the memorandum after they cancelled their respective contracts with Magnolia, and Abercrombie has presented no proof that his publication of the memorandum was received only by its intended recipients. Abercrombie asserts that he sent the memorandum to the nursing homes to protect Magnolia from the repeated false statements of Marquis representatives, to mitigate its own damages in the event Napper caused injury while engaged in the unauthorized practice of dentistry, and to protect the public from Napper. Plaintiffs dispute Abercrombie's motives and claim that he is liable for libel and intentional interference with present and prospective business relationships.

Plaintiffs filed a Statement of Additional Undisputed Material Facts (Docket Entry No. 39). Abercrombie, however, did not file any response to Plaintiffs' Statement of Additional Undisputed Material Facts. The parties provided declarations, exhibits, and the Abercrombie deposition for the Court's review.

Abercrombie asks the Court to strike two paragraphs of the Janice Adrian Declaration (Docket Entry No. 42) filed by Plaintiffs in support of their opposition to the summary judgment motion. Adrian, a former Magnolia employee who apparently now works for Marquis, stated in paragraph 4 of her declaration that "[n]o representative of Marquis Mobile Dental Services, LLC ("Marquis") has made any fraudulent effort to induce Magnolia clients to terminate legally binding contracts." In paragraph 5 she stated that "[n]o representative of Marquis has infringed on any copyrights owned by Magnolia Mobile Dental Service, Inc." The same exact two paragraphs appear in the Napper declaration, but they are numbered paragraphs 14 and 15.

5

Abercrombie moves to strike these paragraphs from the Adrian and Napper declarations on the ground that Adrian and Napper are not attorneys and they are not competent to offer testimony as to what constitutes fraud, a legally binding contract, or copyright infringement. While the verbiage in the two declarations appears to be drafted by a lawyer and not by Adrian or Napper in a lay person's language, the Court believes Adrian and Napper are competent to testify about matters within their own experience and personal knowledge, and these matters may well be within their knowledge. Thus, the Court will not strike these paragraphs and the motions to strike will be denied.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the

6

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. APPLICATION OF LAW

To establish a prima facie case of libel, Marquis and Napper must show: (1) Abercrombie published a statement; (2) with knowledge that the statement was false and defaming to Marquis and Napper; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571 (Tenn. 1999). "'Publication' is a term of art meaning the communication of defamatory matter to a third person." Id.

Abercrombie seeks summary judgment on the libel claims brought by Marquis and Napper on the ground that the statements he included in the memorandum sent to nursing home clients were true and he believed them to be true at the time of publication. But whether Abercrombie's statements were true or whether the statements were made with reckless disregard for the truth or with negligence in failing to ascertain the truth of the statements are the very factual issues in dispute in this case, as set forth above. Abercrombie presents the facts in one light and Marquis and Napper present the facts in another light. Classic factual questions are presented for resolution by a jury, and summary judgment on this claim in not appropriate.

To prove a claim of intentional interference with business relationships, Marquis and Napper must demonstrate: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) Abercrombie's knowledge of that

7

relationship and not a mere awareness of Marquis' and Napper's business dealings with others in general; (3) Abercrombie's intent to cause the breach or termination of the business relationship; (4) Abercrombie's improper motive or improper means; and (5) damages resulting from the tortious interference. Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002). Lawful, competitive business practices are not actionable, id. at 699, and whether Abercrombie acted improperly or with an improper motive is dependent on the particular facts and circumstances of the case. Id. at 701 n.5. With regard to improper motive, Marquis and Napper must demonstrate that Abercrombie's predominant purpose was to injure them. Id.

Again, many facts pertaining to the tort elements are in dispute. Abercrombie asserts that he had contracts in force with the nursing homes and dentists that were approached by the Plaintiffs.[2] Marquis and Napper, on the other hand, contend that some of the nursing homes had previously exercised termination clauses in their contracts with Magnolia and the dentists required no coaxing to leave Magnolia because they were not being paid. Thus, Marquis and Napper contend that they did not interfere with any existing business relationships of Abercrombie or Magnolia.

There is also a factual issue as to whether Abercrombie had knowledge of Marquis' and Napper's business relationships with third parties and not a mere awareness of their business dealings with others in general. There are genuine issues of material fact for trial about whether Abercrombie intended to cause the breach or termination of Marquis' and Napper's business

---

[2]Marquis and Napper contend that Abercrombie did not have any personal business relationships with any of the nursing homes and any contracts were between the nursing homes and Magnolia or the dentists and Magnolia. Thus, Plaintiffs contend Abercrombie lacks standing to bring the summary judgment motion on this claim. While this argument appears to have some merit, Marquis and Napper alleged the intentional interference claim against Abercrombie doing business as Magnolia. Because the Court holds that factual disputes preclude summary judgment, the Court need not resolve this standing issue concerning the motion for summary judgment.

8

relationships or whether Abercrombie acted with improper motive or means. Abercrombie claims that he issued the memorandum to the nursing homes to protect them, their patients, Magnolia, and the public and that he did not send the memorandum with the intent to cause a breach in Plaintiffs' business relationships. Marquis and Napper flatly deny Abercrombie's accusations against them, and thus, there are genuine issues of material fact as to any damages suffered by Marquis and Napper as the result of Abercrombie's conduct.

## IV. <u>CONCLUSION</u>

Numerous issues of material fact remain for trial on Plaintiffs' libel and intentional interference claims. For the reasons stated, Abercrombie's Motion For Summary Judgment (Docket Entry No. 19) and Motions to Strike (Docket Entry Nos. 45 & 46) will be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE